UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
JERRY I. TREPPEL,                    :   03 Civ. 3002 (PKL) (JCF)
                                     :
              Plaintiff,             :        MEMORANDUM
                                     :        AND ORDER
       - against -                   :
                                     :
BIOVAIL CORPORATION, EUGENE N.       :
MELNYK, KENNETH C. CANCELLARA,       :
MICHAEL S. SITRICK, and SITRICK      :
AND COMPANY, INC.,                   :
                                     :
              Defendants.            :
- - - - - - - - - - - - - - - - - - -:
JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

     However wise it may be for parties to agree to an order to
prevent the destruction of evidence, such orders are not always
required.  The plaintiff in this action, Jerry I. Treppel, alleges
that the defendants engaged in a smear campaign that destroyed his
career as a securities analyst.  In his initial complaint, he
asserted claims of defamation, tortious interference with
prospective economic advantage, prima facie tort, and civil
conspiracy against the defendants, Biovail Corporation ("Biovail");
its Chairman and Chief Executive Officer, Eugene Melnyk; its
General Counsel, Kenneth C. Cancellara; Sitrick and Company, Inc.;
and Michael S. Sitrick.  Mr. Treppel now moves pursuant to Rule
37(a) of the Federal Rules of Civil Procedure for an order
compelling the defendants to: (a) preserve all potentially
discoverable data, whether maintained in electronic or paper form;
(b) answer a range of questions concerning their electronic data

1

management practices; and (c) produce all accessible data and documents responsive to the plaintiff's First Request for Production of Documents, including documents responsive to three specific requests. For the reasons discussed below, the plaintiff's motion is granted in part and denied in part.

Background

A. Factual Allegations[1]

Prior to the events that gave rise to this litigation, Mr. Treppel was a securities research analyst who covered the healthcare and pharmaceutical industries for Banc of America Securities ("BAS") and other securities firms. Two of the companies that he routinely analyzed and reported on were Biovail and its competitor, Andrx Corporation ("Andrx"). In 1993, Mr. Treppel acquired 24,000 shares of Andrx stock. He asserts that he fulfilled all reporting obligations with respect to that investment and held the stock in a managed account so that he could not direct or control its trading.

In October 2000 and in January 2002, Mr. Treppel downgraded his recommendation with respect to Biovail. This resulted in

_____

[1] Additional factual detail is contained in three prior decisions in this case: Treppel v. Biovail Corp., No. 03 Civ. 3002, 2005 WL 2086339 (S.D.N.Y. Aug. 30, 2005) ("Treppel III"), Treppel v. Biovail Corp., No. 03 Civ. 3002, 2005 U.S. Dist. LEXIS 2737 (S.D.N.Y. Feb. 22, 2005) ("Treppel II"), and Treppel v. Biovail Corp., No. 03 Civ. 3002, 2004 WL 2339759 (S.D.N.Y. Oct. 15, 2004) ("Treppel I"). The facts are presented here as they are set forth in the pleadings.

substantial declines in its stock value. According to Mr. Treppel, Biovail then retained media consultants Michael S. Sitrick and Sitrick and Company (collectively, the "Sitrick defendants") to engineer a campaign to sully his reputation as an analyst. As part of this campaign, the defendants obtained Mr. Treppel's personal account statements by allegedly taking improper discovery of BAS, a nonparty to this litigation, in a lawsuit in Florida.

On April 29, 2002, Mr. Treppel issued a report and made public comments critical of Biovail and its management and again downgraded his recommendation on the company. Immediately thereafter, Biovail's stock declined in value by more than twenty percent, resulting in substantial personal losses for Mr. Melnyk, who owned eighteen percent of the company's outstanding shares. Mr. Treppel alleges that the defendants then retaliated by providing his personal account statements to The Wall Street Journal and falsely telling the press that he had traded Andrx shares to coincide with the issuance of his recommendations, thus illegally profiting from his own reports. According to Mr. Treppel, the defendants made some eleven defamatory statements about him, falsely stating or implying that he was biased against Biovail because of a conflict of interest in relation to Andrx, that he had concealed his stock holdings in Andrx while reporting on Biovail, and that he had engaged in unlawful conduct by purportedly profiting from his trades of Andrx stock based on his

reports and recommendations concerning both Andrx and Biovail.

These statements were reported in the press, and Mr. Treppel was investigated by the New York State Attorney General's Office, the Securities and Exchange Commission, and the National Association of Securities Dealers. Further, Mr. Treppel alleges that in May 2002 the defendants pressured BAS into placing him on leave and ultimately forcing his resignation.

Mr. Treppel commenced this action on April 29, 2003, and subsequently filed an amended complaint. The defendants initially moved to dismiss, and in an opinion and order dated October 15, 2004, the Honorable Peter K. Leisure, U.S.D.J., granted the motion in part and denied it in part. Specifically, the Court dismissed the plaintiff's defamation claims with respect to eight of the eleven statements on the grounds either that the representations were conceded to be true or that they constituted non-actionable expressions of opinion. Further, the Court dismissed the prima facie tort claim, sustained the plaintiff's claim of tortious interference with prospective economic advantage, and sustained the civil conspiracy claim. Treppel I, 2004 WL 2339759, at *20.

Shortly thereafter, the Sitrick defendants and Mr. Cancellara moved for reconsideration of the Court's holdings with respect to the tortious interference and civil conspiracy claims, and, since these were the only remaining claims asserted against these defendants, they asked that the Amended Complaint as a whole be

dismissed as to them. Judge Leisure agreed, holding that a decision of the New York Court of Appeals, Carvel Corp. v. Noonan, 3 N.Y.3d 182, 785 N.Y.S.2d 359 (2004), filed a day after Treppel I had been decided, made clear that a claim of tortious interference with prospective economic advantage could only be based on acts that were criminal, constituted an independent tort, or were solely intended to inflict harm on the victim. Treppel II, 2005 U.S. Dist. LEXIS 2939, at *14. Judge Leisure found that the Amended Complaint asserted no such conduct by the moving defendants, and he held that allegedly pressuring BAS to terminate Mr. Treppel was not the kind of "extreme and unfair" act that would support a tortious interference claim. Id. at *26-27. Further, since the plaintiff's civil conspiracy claim was derivative of his tortious interference allegations, the Court dismissed it as well and granted the motion to dismiss in its entirety, albeit without prejudice. Id. at *27-28.

Mr. Treppel then filed his Second Amended Complaint, reasserting his claims of tortious interference and civil conspiracy against all defendants. Mr. Melnyk, in turn, filed counterclaims alleging defamation and conspiracy by Mr. Treppel. Specifically, Mr. Melnyk asserted that Mr. Treppel, motivated first by his own financial interests and then by a desire to retaliate for what he perceived as Biovail's role in his termination, disseminated false statements to the effect that: (a) Mr. Melnyk

had caused Biovail to engage in illegal corporate accounting and to issue false operating results and cash flow reports, (b) Mr. Melnyk had directed Biovail to participate in a "fake truck accident" involving a shipment of Biovail products, and (c) under Mr. Melnyk's direction, Biovail had made inappropriate payments to physicians to encourage them to prescribe Biovail products. Finally, Mr. Melnyk alleged that Mr. Treppel had conspired with others to disseminate the false information in order to cause him harm. According to Mr. Melnyk, this conduct caused him losses of 250 million dollars in the value of his Biovail stock.

The Sitrick defendants and Mr. Cancellara then moved to dismiss the Second Amended Complaint ("SAC") on the basis that the modifications made by the plaintiff failed to cure the flaws that the Court had previously identified. Mr. Treppel cross-moved to dismiss Mr. Melnyk's counterclaims. In a decision dated August 30, 2005, Judge Leisure granted the moving defendants' application and again dismissed the claims against them, this time with prejudice. Treppel III, 2005 WL 2086339, at *12. The Court also dismissed without prejudice Mr. Melnyk's defamation counterclaim to the extent that it was based on the allegation that Biovail made improper payments to physicians because that claim was not pled with sufficient particularity. Id. at *8. Judge Leisure denied the motion to dismiss the remaining defamation counterclaims insofar as they were based on statements made in March 2005, but

found that claims based on statements in May 2004 were time-barred. Id. at *11. Finally, the Court dismissed Mr. Melnyk's claim of civil conspiracy, finding it wholly conclusory, but gave him leave to replead. Id. at *12.

B. Discovery Disputes

As noted above, Mr. Treppel filed the initial complaint in this action in April 2003. He did not effect service of that complaint, however, and instead served an amended complaint in August 2003. Motion practice ensued, and while the first set of motions was pending, Mr. Treppel's counsel sent a letter to counsel for Biovail on December 3, 2003, demanding that all information relevant to the claims and defenses in the action, including electronically-stored data, be preserved. (Letter of R. Scott Garley dated Dec. 3, 2003, attached as Exh. 10 to Affidavit of R. Scott Garley dated Oct. 7, 2005 ("Garley Aff.")). Biovail's counsel responded by making a similar demand of plaintiff's attorney. (Letter of Andrew J. Levander dated Dec. 31, 2003, attached as Exh. 11 to Garley Aff.). Plaintiff's counsel later sent a similar letter to the attorneys for Mr. Melnyk and the Sitrick defendants. (Letter of R. Scott Garley dated June 24, 2005, attached as Exh. 18 to Garley Aff.).

There was then little activity in discovery until February 25, 2005, when Mr. Treppel's counsel sent a letter to the attorneys for all defendants enclosing a proposed Stipulation and Order Regarding

7

Electronic Data Preservation and Discovery Protocols (the "Proposed E-Discovery Stipulation"). (Letter of Patrick V. DiDomenico dated Feb. 25, 2005 ("DiDomenico Letter"), attached as Exh. 12 to Garley Aff.). The proposed order reflected a detailed and comprehensive approach to e-discovery. It provided that the parties exchange information about their document retention policies, identify a deposition witness with knowledge of their computer systems, and preserve relevant data in a variety of specifically identified media and storage devices according to a highly detailed protocol. Further, the proposed order would require the parties to produce in native file format all relevant information currently maintained in "accessible" form, that is, on existing hard drives, servers, and removable media such as CDS, DVDs, or ZIP discs. At the same time, the parties would identify but not immediately produce information contained on inaccessible media such as back-up tapes and would provide detailed information about the ability to restore data from that media. The parties would also identify any relevant information that was no longer available and explain the circumstances of its loss or destruction. Finally, the parties would answer a Document Retention Questionnaire that was attached as Schedule A to the proposed order. That form contained 19 questions, together with subparts, relating to the operation of each party's network servers, e-mail services, hard drives, and use of non-firm computers.

After receiving no response, plaintiff's counsel again wrote to defendants' counsel on June 8, 2005, and asked to confer about the proposed order. (Letter of Patrick V. DiDomenico dated June 8, 2005, attached as Exh. 13 to Garley Aff.). Counsel for the defendants declined the invitation, arguing that they were aware of their preservation obligations under the Federal Rules of Civil Procedure and would abide by them; that the proposed order was unnecessarily onerous in light of the relatively narrow issues presented in this case; and that it was inappropriate to consider production of information, electronic or otherwise, in the absence of specific requests for the production of documents. (Letter of Benjamin E. Rosenberg dated June 16, 2005, attached as Exh. 14 to Garley Aff.; Letter of Jerry L. Dasti dated June 17, 2005, attached as Exh. 16 to Garley Aff.; Letter of Frank P. Scibilia dated June 29, 2005, attached as Exh. 22 to Garley Aff.).

On July 11, 2005, counsel for Mr. Treppel propounded Plaintiffs' First Request for Production of Documents to All Defendants ("Pl. Doc. Req."). (Garley Aff., Exh. 5). Each of the defendants responded, objecting to certain requests and agreeing to produce documents responsive to others. (Garley Aff., Exhs. 6, 7, 8). In particular, Biovail objected on grounds of relevance to producing documents in response to requests numbers 18, 19, and 28 which read as follows:

18. All documents concerning the decision by or on behalf of Biovail to subpoena or otherwise obtain Treppel's

personal account statements and trading records in the Florida Lawsuit.

19. All documents concerning the termination of Biovail's investment banking relationship with BAS.

* * *

28. All documents reviewed, referred to or relied upon by Biovail and Melnyk in the preparation of their respective Answers to the Second Amended Complaint in this action.

(Pl. Doc. Req., ¶¶ 18, 19, 28).

With respect to the documents that the defendants did agree to produce, a separate dispute arose. Because much of the responsive information was maintained in electronic form, counsel for Biovail proposed that the parties agree which employees' files were to be searched and what search terms were to be used. (Letter of Andrew J. Levander dated Aug. 9, 2005 ("Levander 8/9/05 Letter"), attached as Exh. 25 to Garley Aff.; Letter of Neil A. Steiner dated Sept. 1, 2005 ("Steiner 9/1/05 Letter"), attached as Exh. 31 to Garley Aff.). Mr. Treppel's counsel demurred, stating that "it is defendants' obligation to simply search its [sic] records and respond to those demands. Plaintiff has no obligation to assist defendants in the process by providing search terms or any other guidance." (Letter of Mark Sidoti dated Sept. 12, 2005 ("Sidoti 9/2/05 Letter"), attached as Exh. 32 to Garley Aff., at 4).

When counsel were unable to resolve these disputes among themselves, the plaintiff filed the instant motion.

Discussion

A. <u>Parties to the Motion</u>

A threshold issue is whether my determination of the current motion applies to the Sitrick defendants. When the plaintiff's discovery demands were served, the Sitrick defendants were parties to the action. Since that time, the claims against them have been dismissed, and they have elected not to respond to the motion to compel unless specifically directed to do so by the Court. (Letter of Frank P. Scibilia dated Oct. 14, 2005).

The Sitrick defendants were free to make that choice.[2] Defendants who have been dismissed with prejudice from a case need no longer respond to discovery requests served upon them when they were parties to the litigation. <u>See</u> <u>Verhagen v. Olarte</u>, No. 89 Civ. 300, 1990 WL 41730, at *1 n.1 (S.D.N.Y. April 4, 1990). Of course, they remain obligated to respond to appropriate third-party discovery. Indeed, in this case, the plaintiff served a subpoena on the Sitrick defendants after the instant motion was pending, and he requests that I now rule on their purportedly inadequate response. (Affidavit of R. Scott Garley dated Nov. 2, 2005) ("Garley Reply Aff."), ¶ 6 & Exh. C; Letter of Adam Richards dated Nov. 15, 2005 ("Richards 11/15/05 Letter")). I will defer

---

[2] Though permissible, the choice may not have been a wise one, since the Sitrick defendants have foregone the opportunity to influence rulings that may have future impact on the determination of issues that directly affect them.

decision. Any inefficiency created by requiring a motion specifically directed to the Sitrick defendants is offset by the clarity that a separate ruling will provide, since the issues concerning the Sitrick defendants, while related to those pertaining to Biovail and Mr. Melnyk, are distinct. For example, the plaintiff represents that Michael Sitrick has failed to respond altogether to the subpoena served upon him individually, which is not an allegation made regarding the other defendants. (Richards 11/15/05 Letter at 2 n.2). Accordingly, this decision shall address only the discovery demands directed to Biovail and Mr. Melnyk.

B. <u>Preservation Order</u>

As noted above, Biovail[3] previously rejected the suggestion of a stipulated preservation order on the grounds that it was fully aware of its preservation obligations and that such an order was unnecessary given the modest scope of the case. (Garley Aff., Exhs. 14, 16, 22). Such reasoning is shortsighted. Even litigation that concerns "relatively precise issues, statements and timeframes" (Garley Aff., Exh. 14 at 1) may nevertheless involve information, including electronic documents, that may be in danger of destruction in the absence of a preservation order. Further, a

---

[3] Biovail submitted papers in opposition to the plaintiff's motion to compel, while Mr. Melnyk simply joined in Biovail's response. Since their interests are coextensive with respect to the instant motion, I will refer to "Biovail" and the "defendants" interchangeably.

preservation order protects the producing party by defining clearly the extent of its obligations. In the absence of such an order, that party runs the risk of future sanctions if discoverable information is lost because it has miscalculated.

It is true that the issuance of a preservation order is by no means automatic, even in a complex case. See United States ex rel. Smith v. Boeing Co., No. Civ. A. 05-1073, 2005 WL 2105972, at *2 (D. Kan. Aug. 31, 2005) ("a specific order from the court directing one or both parties to preserve evidence is not ordinarily required"). Nevertheless, such orders "are increasingly routine in cases involving electronic evidence, such as e-mails and other forms of electronic communication." Pueblo of Laguna v. United States, 60 Fed. Cl. 133, 136 (2004). The critical question is under what circumstances a preservation order should be issued.

Some courts have taken the position that a party seeking a preservation order must meet the standards for obtaining injunctive relief. See Madden v. Wyeth, No. 3-03-CV-0167-R, 2003 WL 21443404, at *1 (N.D. Tex. April 16, 2003); Pepsi Cola Bottling Co. of Olean v. Cargill, Inc., No. 3-95-784, 1995 WL 783610, at *3-4 (D. Minn. Oct. 20, 1995); Cunningham v. Bower, Civ. A. No. 89-2101-S, 1989 WL 35993, at *1 (D. Kan. March 21, 1989); Humble Oil & Refining Co. v. Harang, 262 F. Supp. 39, 42-43 (E.D. La. 1966). In the Second Circuit, a party seeking a preliminary injunction "must show, first, irreparable injury and, second, either (a) likelihood of

success on the merits, or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in the movant's favor." Green Party of New York State v. New York State Board of Elections, 389 F.3d 411, 418 (2d Cir. 2004) (citing Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc., 596 F.2d 70, 72 (2d Cir. 1979)).

However, attempting to apply these requirements in the context of a request for a preservation order creates anomalies. For example, the court must evaluate the merits of the litigation even before evidence has been gathered, let alone produced to the opposing party or submitted to the court. As one court has observed, there is no reason "to consider whether plaintiff is likely to be successful on the merits of its case in deciding whether to protect records from destruction . . . . [S]uch an approach would be decidedly to put the cart before the horse." Pueblo of Laguna, 60 Fed. Cl. at 138 n.8; see also Capricorn Power Co. v. Siemens Westinghouse Power Corp., 220 F.R.D. 429, 433 (W.D. Pa. 2004)("proof of a probability of success in litigation is not an appropriate consideration in the determination whether to order preservation of documents"); Cunningham, 1989 WL 35993, at *1 ("[The] first element of a preliminary injunction is actually irrelevant for purposes of the motion [for a preservation order]. The issue in [this motion] is independent of the issues involved in the lawsuit[.]").  Likewise, it is difficult to evaluate the

14

injury that might be caused by the destruction of evidence without yet knowing the content of that evidence.

Instead of importing the standards for injunctive relief, some courts have instituted a balancing test for determining whether to issue a preservation order. For example, in <u>Capricorn Power</u>, the court outlined a three-factor test, taking into consideration:

> 1) the level of concern that the court has for the continuing existence and maintenance of the integrity of the evidence in question in the absence of an order directing preservation of the evidence; 2) any irreparable harm likely to result to the party seeking the preservation of evidence absent an order directing preservation; and 3) the capability of an individual, entity, or party to maintain the evidence sought to be preserved, not only as to the evidence's original form, condition, or contents, but also the physical, spatial and financial burdens created by ordering evidence preservation.

220 F.R.D. at 433-34. <u>See also</u> <u>Boeing</u>, 2005 WL 2105972, at *2 (citing <u>Capricorn Power</u> test). Other courts have adopted a more streamlined test that simply "requires that one seeking a preservation order demonstrate that it is necessary and not unduly burdensome." <u>Pueblo of Laguna</u>, 60 Fed. Cl. at 138; <u>accord</u> <u>Williams v. Massachusetts Mutual Life Insurance Co.</u>, 226 F.R.D. 144, 147 (D. Mass. 2005); <u>see</u> <u>Walker v. Cash Flow Consultants, Inc.</u>, 200 F.R.D. 613, 617 (N.D. Ill. 2001). The difference between these two tests lies in what the moving party must show with respect to the content of the evidence that is in danger of being destroyed. However, the distinction is more apparent than real. Even under the two-factor approach, one element of demonstrating the necessity for an order

is a showing that the documents in jeopardy are in fact relevant. See Pueblo of Laguna, 60 Fed. Cl. at 138 ("To meet the first prong of this test, the proponent ordinarily must show that absent a court order, there is a significant risk that relevant evidence will be lost or destroyed[.]"). And, while the three-factor test suggests a more specific demonstration of the importance of the evidence -- whether, for example, it is "one-of a kind," see Capricorn Power, 220 F.R.D. at 435 -- neither this nor any other single factor is determinative. See id. Thus, while the ability to establish that unique and critical evidence will be destroyed would certainly buttress any motion for a preservation order, it is not an absolute requirement under either articulation of the balancing test. That test, in turn, is better adapted than the standard for injunctive relief for dealing with the question of whether to require the preservation of evidence, the nature of which may not yet be fully known, and I will therefore apply a balancing standard in this case.

1. Danger of Destruction

There is some likelihood that evidence has been destroyed because Biovail misjudged the point at which its obligation to preserve evidence arose. "Identifying the boundaries of the duty to preserve involves two related inquiries: when does the duty to preserve attach, and what evidence must be preserved?" Zubulake v. UBS Warburg LLC, 220 F.R.D. 212, 216 (S.D.N.Y. 2003).

> [The] obligation to preserve arises when the party has
> notice that the evidence is relevant to litigation --
> most commonly when the suit has already been filed,
> providing the party responsible for the destruction with
> express notice, but also on occasion in other
> circumstances, as for example when a party should have
> known that the evidence may be relevant to future
> litigation.

Kronisch v. United States, 150 F.3d 112, 126 (2d Cir. 1998) (citing

Turner v. Hudson Transit Lines, Inc., 142 F.R.D. 68, 72-73

(S.D.N.Y. 1991)).

In this case, the plaintiff argues that the defendants were on
notice of their preservation obligations as of February 2002, when
key events giving rise to the plaintiff's claims occurred. (Garley
Aff., ¶ 26 & Letter of R. Scott Garley dated Aug. 19, 2005 ("Garley
8/19/05 Letter"), attached as Exh. 27 to Garley Aff., at 2). By
contrast, Biovail contends that the obligation arose no earlier
than December 3, 2003, when plaintiff's counsel issued a letter
formally demanding preservation of evidence. (Defendant Biovail
Corporation's Memorandum of Law in Opposition to the Motion to
Compel ("Biovail Memo.") at 12 n.4). Neither party is correct. On
one hand, the mere existence of a dispute between Mr. Treppel and
Biovail in early 2002 did not mean that the parties should
reasonably have anticipated litigation at that time and taken steps
to preserve evidence. On the other hand, Mr. Treppel first filed
his Complaint in this action on April 29, 2003, and, although he
did not then serve it on the defendants, Biovail was fully aware of
it: on May 1, 2003, a Biovail spokesman told the press that the

suit was "without merit," and three weeks later, the firm reported the litigation in a Form 20-F filing with the Securities and Exchange Commission. (Garley Aff., Exh. 9; Garley Reply Aff., Exh. D at 95). Moreover, on August 22, 2003, Mr. Treppel filed his Amended Complaint and immediately served it on the defendants. Yet, it was not until December 12, 2003, that Biovail implemented a program to preserve electronic data.

The burden of establishing the risk that documents will be destroyed in the future is "often met by demonstrating that the opposing party has lost or destroyed evidence in the past or has inadequate retention procedures in place." Pueblo of Laguna, 60 Fed. Cl. at 138; see also Capricorn Power, 220 F.R.D. at 437 ("Had there been evidence of attempted damage or destruction of the report or the data compilations used to produce it, the Court's level of concern for the protection of the integrity and existence of the evidence would have been different."). Mr. Treppel has shown that Biovail was tardy in establishing a preservation program. He has not, however, demonstrated that the delay in fact led to the loss of any evidence. Moreover, the threat of future spoliation has been diminished by the steps Biovail ultimately took to preserve electronic evidence. On December 12, 2003, it created a back-up of its two central servers, and it made a second back-up of one of these servers on March 17, 2005. In addition, in March 2005, it created an image of the hard drives of the laptops of Mr.

Cancellara and certain other employees. (Levander 8/9/05 Letter at 2). Thus, as of the time that the back-ups were made, Biovail "froze" the information so that in the future it would be neither destroyed beyond recovery nor downgraded from an accessible format to an inaccessible one.[4] While Biovail's failure to recognize promptly its preservation obligation is cause for concern, the plaintiff has demonstrated neither that evidence has been lost nor that the steps Biovail has now taken are inadequate to preserve existing documents.

## 2. Content of Destroyed Documents

Since the plaintiff has not demonstrated that any documents have in fact been destroyed, he necessarily has failed to identify the content of such documents. To be sure, it is not incumbent upon the plaintiff to show that specific documents were lost. It would be enough to demonstrate that certain types of relevant documents existed and that they were necessarily destroyed by the

---

[4] One of my colleagues recently declined to sanction a party for converting data to an inaccessible format, taking the position that there is no obligation to preserve electronic data in an accessible form, even when litigation is anticipated. See Quinby v. Westlab AG, No. 04 Civ. 7406, 2005 WL 3453908, at *8 n.10 (S.D.N.Y. Dec. 15, 2005). I respectfully disagree. The Second Circuit has held that conduct that hinders access to relevant information is sanctionable, even if it does not result in the loss or destruction of evidence. See Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.3d 99, 110 (2d Cir. 2002). Accordingly, permitting the downgrading of data to a less accessible form -- which systematically hinders future discovery by making the recovery of the information more costly and burdensome -- is a violation of the preservation obligation.

operation of the autodelete function on Biovail's computers or by other features of its routine document retention program. But the plaintiff has not yet made even the most basic showing that any documents potentially relevant to this litigation were lost.

### 3. The Burden of Preservation

Finally, the parties have provided no information with respect to the extent of the burden that would be imposed on Biovail if a preservation order were entered. Certainly, the stipulation that the plaintiff originally proposed to Biovail was sweeping. It would have obligated the parties

> to securely maintain, and not destroy or delete, to the extent that they currently exist and may contain potentially discoverable information: (I) electronic data, including email data, whether on back-up tapes, computer hard drives, servers, PDA's, Blackberries, or other physical media and (ii) network Back-Up Tapes, created during the Relevant Period (together, the "Back-Up Tapes"). The defendants and the plaintiff shall be obligated to retain all Back-Up Tapes created during the Relevant Period.

(Garley Aff., Exh. 12, ¶ 4). Such

> a blanket preservation order may be prohibitively expensive and unduly burdensome for parties dependent on computer systems in their day-to-day operations. In addition, a preservation order will likely be ineffective if it is formulated without reliable information from the responding party regarding what data-management systems are already in place, the volume of data affected, and the costs and technical feasibility of implementation.

Manual for Complex Litigation, Fourth § 11.442 at 73 (2004). The plaintiff has therefore failed to demonstrate that the requested preservation order is "not unduly burdensome." Pueblo of Laguna,

20

60 Fed. Cl. at 138.

*      *      *

The plaintiff's application for a preservation order, then, is denied as premature. In the event that Mr. Treppel can later demonstrate that evidence has in fact been lost, that it was likely relevant to claims or defenses in this action, and that an order will not impose undue hardship on Biovail, I will again consider his application. Should the motion be renewed, the parties may address the issue of which of them should bear the costs of preservation. Certainly, the presumption is that the party possessing information must bear the expense of preserving it for litigation. However, especially with respect to electronic data, that cost can become prohibitive. <u>Manual for Complex Litigation, Fourth</u> § 11.442 at 73. If the demanding party seeks the preservation of information that is likely to be of only marginal relevance but is costly to retain, then rather than deny a preservation order altogether, a court may condition it upon the requesting party assuming responsibility for part or all of the expense. <u>Cf.</u> <u>Capricorn Power</u>, 220 F.R.D. at 436 (suggesting that cost of preserving documents might be shifted to party seeking preservation and possibly to its adversary, instead of burdening nonparty possessor of evidence). I appreciate that the plaintiff's inability to meet his burden of demonstrating the need for a preservation order is due in part to Biovail's refusal to provide

21

information about its electronic information system, and I will now address that issue.

C. <u>Document Retention Questionnaire</u>

The Document Retention Questionnaire appended to the plaintiff's Proposed E-Discovery Stipulation set forth a series of inquiries about the manner in which the responding party maintained its electronic information. Then, in letters dated August 19, 2005, and September 12, 2005, plaintiff's counsel supplemented these questions and sought additional information about electronic document maintenance and retention. (Garley 8/19/05 Letter at 2; Sidoti 9/12/05 Letter at 3-4). Biovail has declined to respond, arguing that there is no provision in the Federal Rules for utilizing a device such as the Document Retention Questionnaire as a means of discovery. This defendant further contends that the questionnaire is a "thinly disguised set of interrogatories," and that the plaintiff has already exhausted his quota of twenty-five interrogatories as established by Rule 33(a) of the Federal Rules of Civil Procedure. (Biovail Memo. at 10-11). Finally, Biovail maintains that the questionnaire is unnecessary, since the plaintiff can conduct depositions concerning document retention and destruction. (Biovail Memo. at 12).

I agree that the Document Retention Questionnaire and supplementary inquiries are best characterized as interrogatories. I do not agree, however, that the defendants should be relieved of

the obligation of responding to them.  Rule 33 provides that more than twenty-five interrogatories may be propounded only with leave of court.  It further provides that "[l]eave to serve additional interrogatories shall be granted to the extent consistent with the principles of Rule 26(b)(2)."  Fed. R. Civ. P. 33(a).  Rule 26(b)(2), in turn, authorizes a court to curtail discovery where "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive" or "the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues."  Fed. R. Civ. P. 26(b)(2)(I), (iii).

In this case, there is ample justification for exceeding the 25-interrogatory limit.  The defendants do not deny that some relevant information is likely to have been electronically created and stored.  As discussed above, Biovail was tardy in imposing a preservation program, and some relevant data may therefore have been lost.  The cost of responding to the plaintiff's inquiries is likely to be modest and certainly pales in comparison to the millions of dollars that each side alleges to have lost as a result of the other's depredations.  Finally, a deposition is not an efficient substitute for interrogatories in this instance.  To be

sure, Local Civil Rule 33.3 embodies a well-founded preference for depositions and document requests over interrogatories.[5]  However, in this instance any deposition concerning the operation of Biovail's electronic document system would be an exercise in frustration if counsel were not previously provided basic information about the system.  That information is best obtained by interrogatory.  Biovail shall therefore treat the Document Retention Questionnaire and the supplementary inquiries contained in the August 19, 2005, and September 12, 2005, letters as interrogatories and shall provide substantive responses.

    D. <u>Document Production</u>

        1. <u>Search Protocol</u>

Biovail has yet to produce any documents in response to the plaintiff's document request.  When it received the request, Biovail suggested defining the scope of any review of electronic records by stipulating which files would be searched and what search terms would be utilized.  The plaintiff declined, apparently believing that "the use of search terms has no application to the standard discovery process of locating and producing <u>accessible</u> hard copy and electronic documents."  (Plaintiff's Memorandum of

---

    [5] Local Civil Rule 33.3(b) provides that "[d]uring discovery, interrogatories other than those seeking [identification of witnesses, identification of documents, or computation of damages] may only be served (1) if they are a more practical method of obtaining the information sought than a request for production or a deposition, or (2) if ordered by the court."

Law in Support of His Motion to Compel Discovery at 4 (emphasis in original)).  The plaintiff's assumption is flawed.  Even in a case involving exclusively hard copy documents, there is no obligation on the part of a responding party to examine every scrap of paper in its potentially voluminous files in order to comply with its discovery obligations.  Rather, it must conduct a diligent search, which involves developing a reasonably comprehensive search strategy.  Such a strategy might, for example, include identifying key employees and reviewing any of their files that are likely to be relevant to the claims in the litigation.  See, e.g., General Electric Corp. v. Lear Corp., 215 F.R.D. 637, 640 (D. Kan. 2003); McPeek v. Ashcroft, 202 F.R.D. 31, 32-33 (D.D.C. 2001) ("In a traditional 'paper' case, the producing party searches where she thinks appropriate for the documents requested under Fed. R. Civ. P. 34.  She is aided by the fact that files are traditionally organized by subject or chronology ('chron' files), such as all the files of a particular person, independent of subject.").  Defined search strategies are even more appropriate in cases involving electronic data, where the number of documents may be exponentially greater.  See, e.g., In re Ford Motor Co., 345 F.3d 1315, 1316-17 (11th Cir. 2003); Wood v. Sempra Energy Trading Corp., No. 3:03-CV-986, 2005 WL 3465845, at *4-6 (D. Conn. Dec. 9, 2005); United States v. Amerigroup Illinois, Inc., No. 02 C 6074, 2005 WL 3111972, at *2-3 (N.D. Ill. Oct. 21, 2005); McPeek, 202 F.R.D. at

35.  See also The Sedona Principles: Best Practices Recommendations & Principles for Addressing Electronic Document Production, Principle 11 (2003) ("A responding party may properly access and identify potentially responsive electronic data and documents by using reasonable selection criteria, such as search terms or samples.").   Thus, the plaintiff's refusal to stipulate to a search methodology in this case was apparently based on a misconception of the scope of the responding party's obligation. At the same time, it was a missed opportunity; the plaintiff might have convinced Biovail to broaden its search in ways that would uncover more responsive documents and avoid subsequent disputes.

Yet the plaintiff's recalcitrance does not excuse Biovail's failure to produce any responsive documents whatsoever.  Biovail suggested a strategy by which it would search the computer files of Mr. Melnyk, Mr. Cancellara, and Kenneth Howling, its director of investor relations, using the search terms: (i) Treppel, (ii) Jerry, (iii) Bank of America, (iv) Banc of America, (v) BAS, and (vi) BofA.  (Steiner 9/1/05 Letter at 2).  Absent agreement with Mr. Treppel about a search strategy, Biovail should have proceeded unilaterally, producing all responsive documents located by its search.  It shall now do so promptly.[6]  In addition, Biovail shall

_____

[6] The plaintiff requested production of electronic documents in native file format.  Although Biovail objected to this request, it has provided no substantive basis for its objection.  The documents shall therefore be produced in the form requested

provide the plaintiff with a detailed explanation of the search protocol it implements.

This ruling is not an endorsement of the methodology that Biovail has suggested, either in relation to the choice of files to be searched or the terms to be applied. It is, instead, an interim step that is subject to revision once Biovail has responded to the interrogatories relating to its electronic data and the plaintiff has articulated any specific concerns about the scope of the search.

### 2. Specific Document Requests

Mr. Treppel also moves to compel the defendants to produce documents in response to three specific requests. I will address each in turn.

### a. The Florida Litigation - Request No. 18

First, the plaintiff seeks documents relating to Biovail's decision to subpoena his account statements and trading records in the Florida lawsuit. (Pl. Doc. Req., No. 18). Biovail argues that since Judge Leisure has dismissed the plaintiff's claim of tortious interference with prospective economic advantage because the defendants' conduct in the Florida litigation did not constitute "wrongful means," the requested information is no longer relevant. While relevance is broadly construed in the context of discovery, "it is proper to deny discovery of matter that is relevant only to claims or defenses that have been stricken . . . ." Oppenheimer

<u>Fund, Inc. v. Sanders</u>, 437 U.S. 340, 352 (1978) (footnote omitted).
Thus, to the extent that the requested information is pertinent only to the tortious interference claim, it would not be subject to discovery.

However, the requested documents are also relevant to the surviving defamation claims. Defamation consists of the "twin torts" of libel and slander. <u>Albert v. Loksen</u>, 239 F.3d 256, 265 (2d Cir. 2001) (citation omitted). Under New York law, the elements of a cause of action for slander are:

> (i) a defamatory statement of fact, (ii) that is false, (iii) published to a third party, (iv) "of and concerning" the plaintiff, (v) made with the applicable level of fault on the part of the speaker, (vi) either causing special harm or constituting slander per se, and (vii) not protected by privilege.

<u>Id.</u> at 265-66 (footnotes omitted). A cause of action for libel requires the additional element that the defamatory statement be written rather than spoken. <u>See</u> <u>DiBella v. Hopkins</u>, 403 F.3d 102, 110 (2d Cir. 2005); <u>Albert</u>, 239 F.3d at 265.

In <u>Chapadeau v. Utica Observer-Dispatch, Inc.</u>, 38 N.Y.2d 196, 379 N.Y.S.2d 61 (1975), the New York Court of Appeals addressed the "level of fault" required to establish a claim of defamation. In the context of a claim against a newspaper publisher concerning a statement contained in a published article, the court held that

> where the content of the article is arguably within the sphere of legitimate public concern, which is reasonably related to matters warranting public exposition, the

> party defamed may recover [if he or she can establish] by
> a preponderance of the evidence, that the publisher acted
> in a grossly irresponsible manner without due
> consideration for the standards of information gathering
> and dissemination ordinarily followed by responsible
> parties.

Id. at 199, 379 N.Y.S.2d at 64. New York courts have broadly applied the Chapadeau rubric to private plaintiffs suing non-media defendants, provided that the allegedly defamatory statements arguably relate to matters of public concern and that standards of responsible information collection and dissemination can be applied. See Albert, 239 F.3d at 269; Konikoff v. Prudential Insurance Co. of America, 234 F.3d 92, 101-02 & n.8 (2d Cir. 2000) (collecting cases).

Here, the Chapadeau standard governs Mr. Treppel's claims of defamation. The statements at issue concern alleged misconduct and bias by an analyst reporting in the media about publicly-traded companies: such matters affect the financial markets and are plainly of public concern. See Konikoff, 234 F.3d at 102 n.9 (Chapadeau standard applies to "public controversy about allegedly improper valuation of substantial investments made by a publicly held company"); Post v. Regan, 677 F. Supp. 203, 208 (S.D.N.Y.), aff'd mem., 854 F.2d 1315 (2d Cir. 1988) (finding public concern where public corporation lost 165 million dollars due to unauthorized trading activities).

One issue in this case, then, will be whether the defendants were "grossly irresponsible" in disseminating allegedly false

29

information about Mr. Treppel's holdings in Andrx and his purported conflict of interest. "[O]rdinarily it is grossly irresponsible to make a defamatory statement knowing that it is false or while highly aware that it is probably false." Konikoff, 234 F.3d at 104. Consequently, it will be highly relevant what steps the defendants took to obtain Mr. Treppel's personal accounts and trading records in the Florida litigation in February 2002 and how they processed that information prior to issuing allegedly defamatory statements the following May. The defendants shall therefore produce the documents sought in Request No. 18.

> b. Biovail's Investment Banking Relation with
> Banc of America Securities - Request No. 19

Next, Mr. Treppel seeks documents relating to Biovail's termination of its investment banking relationship with BAS. (Pl. Doc. Req., No. 19). It is apparently the plaintiff's theory that Biovail responded to his public criticism of the company by pressuring BAS to fire him and also by punishing BAS by withdrawing as its investment banking client. (SAC, ¶ 34, 46-53; Pl. Memo. at 11).

Judge Leisure has held that Mr. Treppel's claim of tortious interference fails to state a cause of action in part because Biovail's alleged attempt to have BAS terminate him did not constitute "wrongful means." The plaintiff's demand for discovery therefore cannot be based on the dismissed termination claim.

Furthermore, the requested information is not relevant to the

remaining defamation claims. It is immaterial that Biovail's decision to fire BAS as its investment banker and its decision to disseminate the allegedly defamatory statements might have been motivated by the same animus against Mr. Treppel. Under Chapadeau, the evaluation of a defendant's level of fault -- whether its conduct in publishing defamatory statements was grossly irresponsible -- is an objective determination. See Konikoff, 234 F.3d at 104-06 & n.12. Whether the defendants acted irresponsibly in publicizing Mr. Treppel's purported conflict of interest is an issue analytically independent of their subjective feelings toward him and of their actions with respect to BAS. Thus, the defendants need not respond to Request No. 19.

### c. Documents Reviewed in Preparing the Answers - Request No. 28

Finally, Mr. Treppel seeks all documents reviewed or relied on by Biovail and Mr. Melnyk in drafting their answers to the Second Amended Complaint. (Pl. Doc. Req., No. 28). The defendants object on the grounds that the selection of documents for review constitutes attorney work product and that the request is duplicative, since any relevant documents would be produced in response to more specific discovery requests.

The defendants have not demonstrated that the plaintiff's request implicates the work product doctrine. In a narrow subset of circumstances, an attorney's selection or compilation of documents may reveal counsel's strategic decisions and thought

31

processes such that it constitutes work product. See <u>In re Grand</u> <u>Jury Subpoenas Dated March 19, 2002 and August 2, 2002</u>, 318 F.3d 379, 385-87 (2d Cir. 2003). That is less likely where, as here, the discovery request is directed not to the attorney's selection but to what the party itself reviewed; while some of the documents that the defendants looked over in connection with preparing the answers may have been provided by counsel, others may have been chosen by the defendants themselves. In any event, it is the burden of the party asserting the work product doctrine to establish its applicability, <u>see</u> <u>United States v. Construction</u> <u>Products Research, Inc.</u>, 73 F.3d 464, 473-74 (2d Cir. 1996); <u>In re</u> <u>Initial Public Offering Securities Litigation</u>, 220 F.R.D. 30, 34 (S.D.N.Y. 2003), and the defendants have not met that burden here.

Nevertheless, the plaintiff's discovery demand is both overbroad and duplicative. The fact that a party may happen to have reviewed a document in connection with a pleading does not establish that the document is relevant to any claim or defense; the party may, for example, have referred to a document and then determined that, in fact, it had nothing to do with the litigation. And, as the defendants suggest, any relevant document that was reviewed in connection with drafting the answers would be produced either in the defendants' initial disclosures pursuant to Rule 26(a)(1) or in response to specific discovery demands. The defendants therefore need not respond to Request No. 28.

Conclusion

For the reasons discussed above, the plaintiff's motion to compel is granted to the extent that Biovail and Mr. Melnyk shall provide responses to the interrogatories contained in the plaintiff's Document Retention Questionnaire and supplementary letters; shall promptly conduct a diligent search, explain the search protocol they use, and produce the responsive documents so located; and shall produce documents responsive to Request No. 18 of Plaintiff's First Request for Production of Documents to All Defendants. In all other respects, the plaintiff's motion is denied.

SO ORDERED.

James C. Francis IV

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE

Dated: New York, New York
       February 6, 2006

Copies mailed this date:

R. Scott Garley, Esq.
Mark S. Sidoti, Esq.
Adam Richards, Esq.
Gibbons, Del Deo, Dolan, Griffinger
    & Vecchione PC
One Pennsylvania Plaza, 37th Floor
New York, New York  10119-3701

33

Andrew J. Levander, Esq.
Benjamin E. Rosenberg, Esq.
Neil Steiner, Esq.
Robert W. Topp, Esq.
Dechert, LLP
30 Rockefeller Plaza
New York, New York  10112

Marc E. Kasowitz, Esq.
Michael J. Bowe, Esq.
Rodney Villazor, Esq.
Kasowitz, Benson, Torres & Friedman LLP
1633 Broadway
New York, New York  10019-6799

Ronald Rauchberg, Esq.
Frank P. Scibilia, Esq.
Proskauer Rose LLP
1585 Broadway
New York, New York  10036